UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN E. JONES,<br>    Plaintiff<br><br>v.<br><br>WILLIAM A. MASON, CHIEF<br>OF POLICE, HARWICH POLICE<br>DEPARTMENT, and the TOWN<br>OF HARWICH,<br>    Defendants | Civil Action No.<br>04-10133-MEL |

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT**

Pursuant to Fed.R.Civ.P. 56, defendants Town of
Harwich (the "Town") and William A. Mason, Chief of the
Harwich Police Department, ("Mason") move the court to
grant summary judgment in their favor and against
plaintiff Carolyn E. Jones ("Jones") on counts I, II,
IV, and V of her complaint.  This motion is supported by
the memorandum below.

**STATEMENT OF THE CASE**

In June 2003, plaintiff's employment with the Town
as a police dispatcher and special police officer was
terminated. Defendants' Statement of Material Facts
("Statement of Facts") at ¶14.[1]

---

[1] Pursuant to Local Rule 56.1, defendants have filed
herewith a statement of material facts as to which there
is no genuine issue to be tried.  Citations to
statements of fact in this memorandum are to defendants'
LR 56.1 statement, its appendices, and the pleadings.

In December 2003, Jones filed suit against the Town, alleging that she had suffered adverse employment actions and that the Town terminated her employment because of her gender, in violation of M.G.L. c. 151B (Counts I and II), and/or her exercise of speech protected by the First Amendment of the United States Constitution, in violation of 42 U.S.C. §1983 and M.G.L. c. 12, §11I (Counts IV and V).  Jones also alleges that the Town impermissibly denied her benefits due under M.G.L. c.41, §111F and retaliated against her for her attempt to exercise her rights under that statute (Counts III and IV). <u>Jones' Complaint</u> (the "Complaint") at 6-7.[2]

Defendants deny plaintiff's allegations and move the court to award summary judgment in their favor on counts I, II, IV, and V of the complaint.  The

_____

[2] It is believed that plaintiff intended, in count III of her complaint, to allege a violation of M.G.L. c.41, §111F ("Leave With Pay for Incapacitated Employees")—not M.G.L. c. 111F ("Hazardous Substances Disclosures By Employers") as is written in the complaint. <u>Complaint</u> at 6 ("Defendants have unlawfully denied plaintiff the right to receive benefits under M.G.L. c. 111F (sic)"). To the extent plaintiff does allege a violation of M.G.L. c. 111F, her claim fails and defendants move the court to award summary judgment on the count in their favor: Jones makes no mention in her complaint of hazardous substances and she has failed to exhaust administrative remedies as required by M.G.L. c. 111F, §13.

undisputed facts and relevant legal principles demonstrate, inter alia, that: 1.) Jones' claim under M.G.L. c. 151B fails because she cannot make out a prima facie case of gender discrimination.  Even if she could make out a prima facie case, the Town had legitimate, nondiscriminatory reasons for all employment actions taken against Jones, including her discharge (Mason determined that Jones had engaged in acts of malfeasance and dishonesty), and Jones can offer no evidence to demonstrate that such proffered reasons were a pretext for discrimination; 2.) Jones' First Amendment claim fails because she did not speak out on any matter of public concern.  Jones' alleged protected speech concerned only the grievances of her and her union on working conditions. In addition, even if Jones had spoken out on matters of public concern, she would have been terminated anyway because Mason determined that she engaged in acts of dishonesty and malfeasance; 3.) Mason has qualified immunity from Jones' claim under 42 U.S.C. §1983 (count V is against Mason and not the Town) and the Town and Mason (in his official capacity) are not subject to suit under M.G.L. c. 12, §11I.

## ARGUMENT

## I.   PLAINTIFF'S CLAIM OF GENDER DISCRIMINATION FAILS AS A MATTER OF LAW.

In counts I and II of her complaint, Jones alleges that the Town and Mason discriminated against her in violation of M.G.L. c. 151B.  Jones' complaint seems to allege that she was subjected to four adverse employment actions because of her gender: 1.) she was not hired to the position of police officer, Complaint at ¶¶4,11; 2.) she was taken off the bicycle patrol while a special police officer, Id. at ¶31; 3.) she was not allowed to drive a police cruiser as a special police officer, Id. at ¶27; and, 4.) her employment with the Town as a dispatcher and special police officer was terminated, Id. at ¶¶28-30.

Jones cannot make out a prima facie case of discrimination for any of those alleged adverse actions. In addition, even if she could make out a prima facie case, the Town had legitimate non-discriminatory reasons for all of its actions and Jones can provide no evidence to controvert the Town's proffered reasons.[3]

_____

[3] In an employment discrimination case under M.G.L. c. 151B involving circumstantial evidence, courts will apply the three-stage order of proof set forth by the U.S. Supreme Court in cases such as McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 116 (2000)(citations omitted).  The three-stage order of

**A.)  Jones Never Applied for The Position of Regular Police Officer.**

In a failure to hire case, a plaintiff must, generally, demonstrate that: (1) she is a member of a class protected by the state discrimination statute, (2) she applied for an open position, (3) she was not selected, and (4) her employer sought to fill the position by hiring another individual with qualifications similar to hers. See Wheelock College v. Massachusetts Comm'n Against Discrimination, 371 Mass. 130, 135, fn. 5 (1976).  Jones cannot satisfy the second

---

proof proceeds, generally, as follows: The plaintiff bears an initial burden of persuasion to establish a prima facie case of discrimination.  If the plaintiff sustains this burden, a rebuttable presumption of discrimination arises and a burden of production falls on the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  If the employer sustains its burden of production, the presumption of discrimination will fall away and the plaintiff will be required to show that the basis of the employer's decision was unlawful discrimination. Id. at 116-119 (2000)(citations omitted).  Despite this burden shifting, the ultimate "burden of proof of unlawful discrimination rests at all times with the complainant." Wheelock College v. M.C.A.D., 371 Mass. 130, 139 (1976). Summary judgment is appropriate in a 151B case where the defendants' motion "demonstrate[s] that the plaintiff is unable to offer admissible evidence of the defendant's discriminatory intent, motive, or state of mind sufficient to carry the plaintiff's burdens and support a judgment in the plaintiff's favor." Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128 (1997)(citations omitted).

part of the test because <u>she never applied for the position of regular police officer with the Town</u>.

After his hire in June 2000, Mason revised and formalized the police department's hiring process. <u>Mason Affidavit(Statement of Facts, Tab 1)</u> at ¶3. The selection process now mirrors many aspects of the state's civil service process (although the Harwich Police Department is not bound by the state civil service laws). <u>Mason Answers to Interrogatories (Statement of Facts, Tab 11)</u> at No. 13. Announcements of vacancies for full-time police officer position are placed on the police department's bulletin board and are advertised. <u>Statement of Facts</u> at ¶49.; <u>Mason Deposition (Statement of Facts, Tab 2)</u> at 69. Applicants are required to fill out an application and take an examination. <u>Statement of Facts</u> at ¶50. Thereafter, the department creates an eligibility list based on the results of the examination. <u>Id</u>. at 52. Mason interviews the top three persons from the list and, subsequently, one or more of the candidates is offered employment as a police officer. <u>Ibid</u>; <u>Mason Answers to Interrogatories</u> at No. 13.

Jones did not fill out an application for the position of police officer. <u>Jones Deposition (Statement</u>

of Facts, Tab 5) at 87. Nor did she take the examination

for the position. Ibid.[4]; Jones' Answers to Defendants

Interrogatories (Statement of Facts, Tab 12) at No. 9.

Her claim that the Town did not hire her to the position

of police officer because of her gender must fail.[5]

### B.)  All Special Officers—Men and Women—Were Taken Off Bicycle Patrol and No Special Officers Who Had Not Received Proper Training Were Allowed To Drive Police Cruisers.

As part of a prima facie case that she was taken

off the bicycle patrol and not allowed to drive a police

---

[4]  Q:   Did you ever have conversations with the
         chief of police regarding the process to
         become a full-time police officer?
     A:   Yes, I did…He explained that he had recently
         implemented an exam process, and that I
         would have to take an exam
         …
     Q:   Did he discuss with you any other sort
         of process that you would have to
         follow to become a full-time police
         officer.
     A:   I would be placed on a list, according
         to score, he said.
     Q:   And at any time…did you take a written
         examination to become a full-time
         officer?
     A:   No.
         …
     Q:   And at any time [between] January of 2001
         and May, June 2003, when you were
         terminated, did you apply to become a full-
         time police officer in writing to the Town
         of Harwich?
     A:   No. Jones Deposition. at 85-87.

[5] To the extent Jones may allege that her failure to hire
claim arose before the hiring process was revised and
formalized in 2001, her claim is be barred by 151B's
statute of limitations. M.G.L. c. 151B, §5.

cruiser because of her gender, Jones must demonstrate
that the Town allowed someone with qualifications
roughly equivalent to her own to perform the duties when
she was not. See Duncan-Young v. Pine Street Inn, 1997
WL 136337, * (D.Mass. 1997)(citations and internal
quotations omitted).

At the end of the summer of 2000, Mason decided
that special officers would no longer be used on the
bike patrol.  Statement of Facts at ¶15.  Subsequently,
the Town no longer utilized Jones——or any other special
officer, including male special officers——on the bike
patrol. Id. at ¶17.  In his deposition, Mason explained
that he decided to make the bicycle patrol more
rigorous. Mason Deposition at 43 ("[T]here are certain
standards that I believed to be appropriate for the use
of…bicycle enforcement. And it was my direction from the
board of selectmen to bring the department into the 21st
century and to professionalize the department.") After
the summer of 2000, Mason required regular police
officers to apply for the bike patrol——previously there
had been no formal application process for the unit. Id.
at 43-44; Statement of Facts at ¶¶16-19. Those regular
officers who applied and were selected for the unit were
sent to a national academy for bicycle patrol officers

("probably the toughest bicycle patrol school there is")
and were given custom-fashioned uniforms and bicycles.
<u>Mason Deposition</u> at 44-45; <u>Statement of Facts</u> at ¶18.
No special officers were allowed to apply for the
patrol. <u>Mason Deposition</u> at 44. Mason explained: "No
special officers were allowed to apply, for multiple
reasons. Predominantly cost…[T]he training [for bicycle
patrol]…comes up to about $4,500 [per officer]…I would
not get a return for someone who is a part time
employee." <u>Id.</u> at 44-45.  Thus all employees of the
department who worked the bicycle patrol after Jones was
removed from the patrol were regular officers and were
more qualified than Jones and Jones cannot make out a
prima facie claim of discrimination on this point.[6]

Jones also alleges that she was not allowed to
drive a police cruiser because of her gender; however,
Mason's deposition testimony demonstrates that between

---

[6] Even if Jones could make out a prima facie case on this
point, the Chief's stated reasons for taking special
officers off of the bicycle patrol would satisfy the
Town's burden at the second stage of the <u>McDonnell
Douglas</u> test. Jones can offer no evidence to demonstrate
that the Chief's legitimate reasons for removing special
officers from the bike patrol were a pretext for
discrimination.  And, again, the statute of limitations
has run on this element of her claim: Special officers
were taken off bicycle patrol in the summer of 2000;
Jones filed an administrative claim of discrimination in
November 2003. <u>Statement of Facts</u> at App. 3.

June 2000, the date Mason became chief of the police
department, and, June 18, 2003, the date of Jones'
termination, neither regular nor special officers were
allowed to drive department cruisers unless they were
"cruiser qualified." Mason Deposition. at 48-50; Mason
Affidavit at ¶15.[7]  Jones makes no allegation that
special officers who were not cruiser qualified were
allowed to drive patrol cars.  Indeed, Jones herself
began the cruiser qualification training. Mason
Deposition at 57.  Her training was discontinued,
however, and, subsequently, Mason determined that the
department would no longer qualify special officers to
drive cruisers. Mason Deposition at 59-60 ("[W]e had
nobody else to train Ms. Jones at that…time. A staff
meeting ensued after that, where we got into the
discussion of the cost benefit of cruiser qualifying
specials…under my administration we do not use special
officers to fill patrol bases anymore…so…it was not
deemed to be cost effective to spend ten weeks of
training and…wages…for a special officer to become
cruiser qualified.").[8]

---

[7] All regular officers are "cruiser qualified." Mason
Affidavit at ¶15.

[8] Again, even if Jones could make out a prima facie case,
Mason offers legitimate, non-discriminatory reasons for

**C.)  Jones' Employment Was Terminated Because She Engaged In Acts of Malfeasance And Dishonesty. In Addition The Town Hired A Female To Replace Jones.**

To make out a prima facie case of discrimination for her termination, Jones "must demonstrate that she was a member of a protected class, was performing her job at an acceptable level and was terminated while similarly situated males remained on the job." See Flaherty v. Perini/Kiewit/Cashman, 2003 WL 22076363 (Mass.Comm.Discrim. 2003).

Jones cannot satisfy the second element of that test because her performance was not acceptable. In February 2003, she sought to be paid for a paid detail which she did not work. Statement of Facts at ¶40. Mason determined that her seeking to be paid for the detail was a brazen act of dishonesty. Mason Deposition. at 80 ("Ms. Jones never appeared at the site of the detail [] or the police department at all…and yet she still put in for a four hour minimum payment."); 92 ("[Y]ou cannot get paid for a job that you don't show up to work. That to me is fraud.")   In April 2003, Jones attempted to take a sick day without following the department's

---

not allowing unqualified special officers to drive cruisers and for his decision no longer to allow specials to drive cruisers.

explicit procedures for using such leave. Statement of Facts at ¶43. A Department investigation determined that Jones had acted dishonestly in her attempt to take that leave. Mason Affidavit at ¶10.

Even if Jones could establish a prima facie case for her termination, the defendants proffer legitimate non-discriminatory reasons for the discharge and Jones can offer no evidence to controvert the stated rationale of the Mason and the Town. Mason Affidavit at ¶10; Howell Affidavit (Statement of Facts, Tab 10) at ¶5.

> [I]n order to establish that the defendant's stated reasons for terminating him were a pretext, the plaintiff must identify and relate specific instances where persons similarly situated in all relevant aspects were treated differently…The plaintiff must identify other employees to whom he is similarly situated in terms of performance, qualifications and conduct, without such differentiating or mitigating circumstances that would distinguish their situations…Although the offenses of two employees need not be identical, the offenses must be of comparable seriousness…Employees are not similarly situated where one is disciplined pursuant to one policy and then seeks to be compared to coworkers who were not subject to that policy or were subject to a previous policy. Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 129-130 (1997)(citations and internal quotations omitted).

Finally, it is worth noting that the Town hired a female to replace Jones as a dispatcher. <u>Willis Deposition (Statement of Facts, Tab 6)</u> at 42.

## II.  PLAINTIFF'S CLAIM OF A VIOLATION OF FIRST AMENDMENT RIGHTS FAILS AS A MATTER OF LAW.

In counts IV and V of her complaint, plaintiff alleges that the Town interfered with her rights under the First Amendment of the United States Constitution and retaliated against her for her exercise of First Amendment rights.[9]

---

[9] Jones alleges a violation of her First Amendment rights under 42 U.S.C. §1983 (count five) and M.G.L. c. 12, §11I (the "Massachusetts Civil Rights Act" or "MCRA"). Because, as described below, her §1983 claim fails, Jones' MCRA claim—to the extent it alleges a violation of her First Amendment rights (the MCRA claim also includes an allegation that defendants interfered with her rights under M.G.L. c. 41, §111F)—also fails. <u>See Kelley v. LaForce</u>, 288 F.3d 1, 10 (1st Cir. 2002)("§1983 and the MCRA are parallel statutes involving similar analyses")(citations and internal quotations omitted); <u>Fletcher v. Szostkiewicz</u>, 190 F.Supp.2d 217, 230 (D.Mass. 2002). Jones MCRA claim (including its allegation that defendants violated the statute by interfering with her rights under M.G.L. c. 41, §111F) also fails because she does not allege "threats, intimidation, or coercion" sufficient to constitute a violation the statute. <u>See</u> <u>Kelley</u>, <u>supra</u> at 11, fn.7; <u>Fletcher</u>, <u>supra</u> at 230 ( "[T]o succeed on an MCRA claim, a plaintiff, unlike with section 1983, must show that the derogation of rights occurred by threats, intimidation or coercion")(citations and internal quotations omitted); <u>Jones Deposition II (Statement of Facts, Tab 5)</u> at 140-142. Moreover, the Town and the Chief in his official capacity are entitled to summary judgment on the MCRA claim because a municipality may not be sued under the statute. <u>Howcroft v. City of</u>

### A.) Jones Was Not Speaking As A Citizen on Matters of Public Concern.

To establish a claim that free speech rights have been violated, a public employee must first demonstrate that she made "statements as a citizen upon matters of public concern." Tang v. State of Rhode Island, 163 F.3d 7, 12 (1st Cir. 1998)(citations and internal quotations omitted). The "inquiry into the protected status of speech is one of law, not fact." Connick v. Myers, 461 U.S. 138, 148, fn. 7 (1983).

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency…[The federal courts'] responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the state…To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark…would plant the seed of a constitutional case…the First Amendment does not require a public office to be run as a

---

Peabody, 51 Mass.App.Ct. 573, 591-593 (2001); Fletcher, supra at 230("Summary judgment is warranted on the MCRA claim to the extent it targets Plaintiff in his official role as mayor. Unlike section 1983, [i]t is now clear that under Massachusetts law, a municipality cannot be sued under the MCRA.")(citations and internal quotations omitted).

roundtable for employee complaints over
internal office affairs. Id. at 147-149
(citations omitted).

Plaintiff alleges in her complaint that she "became
active in the police union. In that position she was
critical of the police chief and the police
administration." Complaint at ¶12. Plaintiff also
alleges that she "complained about not being hired as a
full time officer" and "asked several times why she was
not cruiser qualified." Ibid; id. at ¶27.  In responses
to defendants' interrogatories and in deposition
testimony, Jones expanded on the allegations in her
complaint and explained that her allegedly protected
speech consisted of complaints regarding: her being
taken off the bicycle patrol (along with all other
special police officers), Jones Deposition. at 15[10]; the
methods by which the police department assigned overtime
and calculated overtime pay, Id. at 19; union grievances
related to "policy and procedure [and] working
conditions," Id. at 27; and Mason's directing that the
patch of the American flag on the police uniform be

---

[10] As explained above, all special officers—including
male special officers—were taken off bicycle patrol at
the end of the summer in 2000. Mason Deposition. at 41-
45.

replaced with a pin of the American flag, Id. at 15.[11],[12]

Jones admits that some of her complaints were made not

to Town officials but to fellow union members. See id.

at 16. She also admits that she "cannot recall

specifically things…that I said in the past" and

characterizes her speech as "general complaining." Id.

at 49; Id. at 45.  She admits that the only time she

remembers being "outspoken and vocal" with Mason was

during the department's investigation into her abuse of

sick leave and falsification of a work slip. Id. at 49.

Such criticisms, assuming arguendo that they were

made by Jones and received by the Town, constitute

nothing more than garden variety complaints on internal

personnel matters and working conditions.  As a matter

_____

[11] In his deposition, Mason recalled that Jones once
complained about the volume of traffic stops made by the
Town's police officers. Mason Deposition. at 37 ("The
nature of the complaint that was portrayed to me was
that she did not want to be bothered making all the
computer entries [as a dispatcher, Jones was often
required to retrieve information on the department's
computers when a police officer made a traffic stop.]")
Jones did not raise the issue of traffic stops in her
complaint or in her answers to interrogatories or
deposition testimony.
[12] As to the allegation in paragraph eleven of her
complaint that she spoke out on not being hired as a
regular police officer, see section I(A) above. Jones
never applied for the position of regular police officer
with the Town. Even if she did speak out on not being
hired, the issue was only of personal and not public
interest.

of law, the comments are not protected speech and Jones'
First Amendment claim fails. <u>Tang</u>, <u>supra</u> at 12-13;
<u>Connick</u>, <u>supra</u> at 147-149.

**B.) Even If Her Alleged Criticisms Of Police Department Personnel Matters Had Been Protected Speech, Jones' Employment Would Have Been Terminated Anyway.**

Even if Jones' alleged criticisms had been on
matters of public interest, the defendants can
demonstrate by uncontested facts and documentation that
her employment would have been terminated anyway and, on
that basis, her First Amendment claim fails. <u>Torres-Rosado v. Rotger-Sabat</u>, 335 F.3d 1, 13 (1st Cir. 2003);
<u>Mt. Healthy City Sch. Dist. v. Doyle</u>, 429 U.S. 274, 285-286 (1977).

As described above, Chief Mason determined that
Jones attempted to deceive the Department twice: once
when she collected pay for a detail she did not work and
once when she attempted to manipulate sick leave. <u>Mason
Affidavit</u> at ¶10.  On those grounds he recommended her
termination. <u>Ibid</u>.  The Town's selectmen, acting
exclusively on Mason's letter to them, terminated Jones'
employment. <u>Howell Affidavit</u> at ¶5.

**C.) Mason Has Qualified Immunity Against The § 1983 Claim.**

In a First Amendment case under § 1983, a
government employee is immune from liability for civil
"damages where a reasonable official could believe (the
test is objective), albeit mistakenly, that his conduct
did not violate the First Amendment." Dirrane v.
Brookline Police Dept., 315 F.3d 65, 69(1st Cir. 2002).

A "court required to rule upon the qualified
immunity issue must consider…this threshold inquiry:
Taken in the light most favorable to the party asserting
the injury, do the facts alleged show the [government
official's] conduct violated a constitutional right."
Saucier v. Katz, 533 U.S. 194, 201 (2001). As described
above, Jones' complaint does not make out an actionable
First Amendment claim.  Only two paragraphs of the
complaint (paragraphs 12 and 27) concern plaintiff's
speech, and that alleged speech consisted of plaintiff's
grievances as an employee——not matters protected by the
First Amendment.[13]

---

[13] Count V seems to be leveled against Mason and not the
Town. Complaint at 7 ("Defendants Mason (sic) has
retaliated against plaintiff…in violation of 42 U.S.C.
§1983.").  In his official capacity, Mason is not a
"person" under §1983. Howcroft v. City of Peabody,
51 Mass.App.Ct. 573, 583, fn. 15 (2001)(citations
omitted). A §1983 claim against Mason in his official
capacity should be taken as a claim against the Town
itself. Ibid. The Town, however, might only be held
liable here if "(1) a constitutional harm occurred, and

Even if plaintiff could survive that threshold inquiry, Mason would still be entitled to qualified immunity because it would not have been "clear to a reasonable [official in Mason's place] that his conduct was unlawful in the situation he confronted." Id. at 202. Even if Mason had disciplined Jones or terminated her employment because of her speech on personnel matters——and he denies that he did so——such action would not have violated Jones' rights under the First Amendment and would not have appeared unlawful to a reasonable police chief. Moreover, Mason's decision to terminate her employment was reasonable as he determined that she had attempted to manipulate improperly work records and the department's policies on leave. Mason Affidavit at ¶10.

---

(2) the harm was caused by the execution of [the] government's policy or custom." Rosenberg v. City of Everett, 328 F.3d 12, 17 (2003)(citations and internal quotations omitted). Plaintiff can satisfy neither of those requirements. First, as described above, plaintiff cannot make out a First Amendment claim. Second, even if plaintiff could demonstrate that her First Amendment rights were violated, she does not allege that the Town had a policy or custom which led to the alleged deprivation of her constitutional rights. See Polk County v. Dodson, 454 U.S. 312, 326 (1981). In addition the affidavit of Selectmen Howell, demonstrates that the Town made its decision to terminate Jones' employment solely on the basis of the letter from Mason to the selectmen and Jones can offer no evidence to controvert that proffered rationale. Howell Affidavit at ¶5.

CONCLUSION

For the reasons stated above, defendants move the court to grant summary judgment in their favor on counts I, II, IV, and V of plaintiff's complaint.[14]

REQUEST FOR A HEARING

Pursuant to Local Rule 7.1(D), defendants request a hearing on this motion.

<div style="margin-left:40%">

Respectfully submitted,
By the Defendants, Town of
Harwich and William A. Mason,
By their attorneys,

_____

Michael C. Gilman,
BBO# 192820
Robert J. Van Campen,
BBO#648638
Eugene J. Sullivan III,
BBO#656497
GILMAN/ HOLTZ, P.C.
25 New Chardon Street
Boston, MA 02114
</div>

Dated:                    (617) 720-2663

LOCAL RULE 7.1(A) CERTIFICATION

Above-signed counsel certify that they have conferred with plaintiff's counsel and have attempted to resolve or narrow the issues in this case.

---

[14] As noted in footnote two, defendants also move the court to grant summary judgment on Count III of plaintiff's complaint if, indeed, she alleges a violation of M.G.L. c. 111F.