UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CAROLYN E. JONES,        )
    Plaintiff            )
                         )  Civil Action No. 04-10133-MEL
V.                       )
                         )
WILLIAM A. MASON, Chief of )
Police, Harwich Police Department )
and TOWN OF HARWICH,     )
    Defendants,          )
                         )

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGEMENT

       On June 17, 2003 Plaintiff Carolyn Jones was fired from all of her positions with the Town of Harwich Police Department. Ms. Jones was then working as a full time dispatcher, a year round special police officer, an animal control officer and an occasional file clerk. Her goal had been to work her way into a position as a full time regular police officer.

       Ms. Jones' difficulties with the Department began shortly after she returned to work as a full time dispatcher in December 2002. At that time she became a union officer.

       Ms. Jones initially began working as a dispatcher in July 1999, and became a "permanent" employee in December of that year. She successfully completed a one year probationary period, receiving grades of excellent and outstanding on her last evaluations. She had no disciplinary issues of any type.

In July 2000 Defendant William Mason became the new Harwich Police Chief. In January 2001, Ms. Jones resigned her dispatching position to further her education. She retained her other positions with the police department. In November 2002 Harwich Police Lt. Gagnon sought Ms. Jones out and persuaded her to return as a full time dispatcher. One of the primary enticements to Ms. Jones was Lt. Gagnon's promise that the dispatching position would help her land a position as a regular police officer. Chief Mason sent a letter to the Selectmen asking for her reappointment as a dispatcher and stating:

> After *careful review* of Ms. Jones' background, resume, *work performance*, and *staff recommendation*, I am recommending that she be appointed as a full time dispatcher…

Upon her return to full time employment Ms. Jones was elected to a position as Union Secretary, a position which made her part of the bargaining committee. She participated in negotiations over a number of issues with Chief Mason, and was vocal in her opposition to some of her policies, including one involving limitations on the display American flag patches and pins. Ms. Jones was subjected to increasing scrutiny of her work, had her performance criticized, had injured on duty leave denied and was finally discharged without cause and without warning.

As a member of a union the police department was required to establish just cause for discharge, with discharges being reviewable by an arbitrator. The Town attempted to avoid arbitration by arguing that Ms. Jones was a probationary employee. Despite the heavy presumptions in favor of arbitrability, the Town sued in the Bristol County Superior Court seeking an injunction against arbitration. That injunction was denied and

the Town has not pursued that suit. After a bifurcated hearing, a labor arbitrator ruled that Ms. Jones was not a probationary employee and that she could only be fired for just cause. Arbitration on the issue of just cause is set for April 7, 2005. For reasons set forth below, the Town has no possibility of establishing that the proffered reasons for discharge constitute any basis for discipline, let alone just cause for discharge.

Count One of Plaintiff's complaint alleges that the Town of Harwich discriminated against Ms. Jones in her employment on the basis of her gender in violation of M.G.L. c. 151B. Count Two alleges that Defendant Mason aided and abetted in that discrimination. There is no claim under Title VII, and therefore the applicable law is that of the Commonwealth of Massachusetts. Count Five of the complaint alleges that plaintiff was discharged in violation of 42 U.S.C. Sec. 1983 for exercising her First Amendment rights.

Plaintiff alleges that the Town and Chief Mason[1] were motivated by the fact that Ms. Jones became a Union officer and in that capacity spoke out on various issues of public concern. Plaintiff contends that Chief Mason and the Town of Harwich were motivated to get rid on Ms. Jones because she was speaking out as a female Union officer. Either motivation is illegal. Because the proof of motivation is interconnected it will be most helpful to discuss the law of discrimination and that relating to the First Amendment followed by an application of the facts to that law.

## DISCRIMINATION IN EMPLOYMENT

---

[1] The Town of Harwich, through its selectmen, is the appointing authority for the police department and made the final decision to discharge Ms. Jones. The selectmen acted upon recommendation of Chief Mason. In each instance it is Chief Mason who made the decision to institute or pursue an investigation of Ms. Jones and to recommend her termination. He is therefore personally liable for his actions.

Summary judgment is rarely granted in cases alleging discrimination since the ultimate question, the intent or motivation of the Defendants, is almost always a question of fact. Abonte v. Hutchins & Wheeler, 424 Mass. 813, 678 N.E.2d 853, 858 (1997); Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 646 N.E.2d 111, 114 (1995); Zhang v. MIT, 46 Mass. App. Ct. 597, 708 N.E.2d 128, 133 (1999). "Where motive, intent, or other state of mind questions are at issue, summary judgment is often inappropriate." Flesner v. Technical Communications Corp., 410 Mass. 805, 809, 575 N.E.2d 1107 (1991). "The ultimate question of the defendants' state of mind is elusive and rarely is established by other than circumstantial evidence, which requires the jury to weigh the credibility of conflicting explanations of the adverse hiring decision." Blare v. Husky, supra, citing Wheelock College v. MCAD, 371 Mass. 130, 137, 355 N.E.2d 309 (1976). For purposes of summary judgment the plaintiffs are entitled to the benefit of any inferences that may be drawn from the facts. White v. University of Massachusetts at Boston, 410 Mass. 553, 574 N.E.2d 356, 358 (1998). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that he or she is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the Plaintiffs have established a prima facie case of discrimination, summary judgment may not be granted to the defendants, particularly where there are disputed issues of fact related to the defendants' proffered reasons for its actions. Blare v Husky, supra; Zhang v. MIT, supra.

Proof of discrimination may be by either direct or circumstantial evidence. Wheelock College v. MCAD, supra. Where the evidence is circumstantial, the Court has adopted the three stage shifting of evidentiary burdens first set out in federal

discrimination cases. Wynn & Wynn v. MCAD, 431 Mass. 655, 665, 729 N.E.2d 1068, 1078 (2000). Under that process, the Plaintiff must first establish a prima facie case. The burden of production then shifts to the employer to produce legitimate, non-discriminatory reasons for its actions. Where the employer meets this burden, the plaintiff has the burden of proving that the proffered reasons are a pretext. Id. "[A] showing of pretext eliminates any legitimate explanation for the adverse hiring decision and warrants a determination that the plaintiff was the victim of unlawful discrimination. The plaintiff need not conclusively exclude all other possible explanations for the decision and prove intent beyond a reasonable doubt." Blare v. Husky, 419 Mass. at 446, 646 N.E.2d 111 (1995); Abramian v. Pres. & Fellows of Harvard College, 432 Mass. 107, 116 (2000). See Handrahan v. Red Roof Inns, Inc., 43 Mass.App.Ct. 13, 18-19, 680 N.E.2d 568 (1997).

Most cases involve the use of circumstantial evidence because direct, "smoking gun", evidence of discrimination is rare. Blare v. Husky, supra at Mass. 445, N.E.2d 111; City of Salem v. MCAD, 44 Mass. App. Ct. 627, 642, 693 N.E.2d 1026, 1038 (1998). Relevant circumstantial evidence can include the employer's practices and policies, its differential treatment of employees, "uncontrolled subjectivity", and "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions." City of Salem v. MCAD, supra. (internal citations omitted). Where there is direct evidence of discrimination the three stage test is inapplicable. Wynn & Wynn v. MCAD, supra.

There is a third group of cases, called "mixed-motive" cases, in which the Plaintiff offers strong, direct evidence that at least one factor motivating the employer

was illegal discrimination. The Supreme Judicial Court's decision in <u>Wynn & Wynn</u> discusses mixed-motive cases. "Direct evidence in this context is evidence that 'if believed, results in an inescapable, or at least highly probable, inference that a forbidden bias was present in the workplace.'" Id. (internal citations omitted). The plaintiff's initial burden is to "prove by a preponderance of the evidence that proscribed factor played a motivating part in the challenged employment decision." Id. The burden of <u>persuasion</u> then shifts to the employer. <u>Id.</u> The employer may avoid liability only by proving that it would have made the same decision absent the discriminatory reason. Id. Once the plaintiff has met the burden of persuasion on the existence of a discriminatory motive, the question of whether the employer can prove the existence of legitimate non-discriminatory motives which would have caused it to make the same decision <u>is a question of fact which cannot be resolved on summary judgment</u>. Id.

Under M.G.L. c. 151B the Town of Harwich is liable for the discriminatory actions of its employees, including specifically Chief Mason. <u>Thomas vs. EDI Specialists, Inc.</u>, 437 Mass. 536 (2002). M.G.L. c. 151B, sec. 4(5) for any person to aid, abet, compel or coerce the doing of any acts forbidden by Chapter 151B. See <u>Beaupre v. Cliff Smith & Assoc</u>., 50 Mass. App. Ct. 480 (2000) (Clifford Smith, principal in Clifford Smith & Associates was held liable for aiding and abetting the corporation in acts of sexual discrimination). Chief Mason made the decision to discharge Ms. Jones and sent the letter to the selectmen recommending that discharge. He directed that she be investigated and approved or made all decisions. The selectmen acted upon his recommendation in terminating Ms. Jones.

VIOLATION OF FIRST AMENDMENT RIGHTS

It is well established that the First Amendment precludes a town from conditioning employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression. Keyishian v. Board of Regents, 385 U.S. 589, 605-606 (1967); Pickering v. Board of Education, 391 U.S. 563 (1968); Perry v. Sindermann, 408 U.S. 593, 597 (1972); Branti v. Finkel, 445 U.S. 507, 515-516 (1980). To prevail on her claim that she was discharged in violation of her First Amendment rights, Ms. Jones must establish that (1) her expression involved matters of public concern; (2) her interest in commenting upon those matters outweighed the City's interests in the efficient performance of its public services; and (3) her protected speech was a substantial or motivating factor in the City's adverse employment actions. Mullin v. Town of Fairhaven, 284 F.3d 31, 37-38 (1st Cir. 2002) (citing Connick v. Myers, 461 U.S. 138, 147-48 (1983); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977); Pickering v. Bd. of Educ., 391 U.S. 563 (1968)); Nethersole v. Bulger, 87 F.3d 15, 18 (1st Cir. 2002).

To determine whether an employee's speech implicates public concerns courts analyze "the content, form, and context of [the speech], as revealed by the whole record." Connick, 461 U.S. at 147-48. There an assistant district attorney was fired after she circulated a questionnaire which was critical of her supervisors, but which nevertheless was essentially a response to her transfer; an issue that affected her personally. The issues which were solely personal to her were not deemed to be of public concern. However, since one of the issues she raised "touched upon a matter of public concern", albeit "marginally" in the Court's view, the first element of the test was met, and it was necessary to determine whether the discharge was justified. Id. The complaint does not

have to be made outside of the workplace in order for it to be a matter of public concern. Id.; Givhan v. Western Line Consolidated School District, 439 US 410 (1979). Tang v. Rhode Island, 163 F.3d 7 (1st Cir. 1998) does not hold otherwise. Although the plaintiff in that case was the Union president all of the grievances in which she was involved were personal, affecting only her, and therefore did not affect matters of public concern.

The final prong in the Connick test is to produce evidence of motivation. At trial a plaintiff in a First Amendment case must produce such sufficient evidence of motivation that "the burden of persuasion itself passes to the defendant-employer." Acevedo-Diaz v. Aponte, 1 F.3d 62, 67 (1st Cir. 1993). The determination as to motivation is fact laden. Wytrwal v. Saco Sch. Bd., 70 F.3d 165, 170 (1st Cir. 1995).

### DISPUTED ISSUES OF FACT PRECLUDE THE GRANT OF SUMMARY JUDGMENT TO THE DEFENDANTS

Given the above discussion of law it is clear that the facts of this case preclude the grant of summary judgment to the defendants. Where the facts are disputed the plaintiff is entitled, under familiar rules applicable to summary judgments, to have the facts viewed in the light most favorable to her and to the benefit of all inferences that may be drawn from those facts.

Here, Harwich has a history of not hiring females in the police department and particularly police officers. Of the three female officers, one was discharged and one left after a short stay.

Ms. Jones was reinstated as a full time dispatcher after a ranking lieutenant asked her to return to full time work, and held out the promise of a becoming a regular police officer. She had previously performed the job for over a year and a half. Her evaluations during that time period were excellent and outstanding. She received no discipline during

that time. Chief Mason recommended her reappointment to the selectmen, stating that he had carefully studied Ms. Jones's background, and extolling her experience. Ms. Jones had in fact remained as a police department employee, including a special police officer, during the period between her resignation as a full time dispatcher and her reinstatement to that position. Chief Mason reappointed her as a special police officer three years in a row. There can be no claim that Ms. Jones was not qualified to be a dispatcher or not a good employee.

What changed was that at the same time of her reinstatement, Ms. Jones became a Union officer. She was the only female Union officer. In the interim period where she was not a full time dispatcher there had been changes in the Department including newly hired officers on her shift, and the establishment of defendant Mason in the position of Chief.[2]

## THE EVIDENCE ESTABLISHES THAT MS. JONES SPOKE ON MATTERS OF PUBLIC CONCERN

Defendants primarily argue that Ms. Jones did not speak on matters of public concern. They offer no argument that the Town's interest in efficient service by its employees outweighed Ms. Jones' freedom of speech. In fact, it would be difficult to argue that a Town had the right to suppress a union official speaking about contract negotiations or matters affecting the union membership. The final issue of causation is a factual determination which cannot be decided on this motion.

The Union contract was expiring at the end of June 2003. Ms. Jones participated in contract negotiations and in meetings and discussions on a number of issues important

---

[2] Defendant Mason had been Chief for approximately six months when Ms. Jones stopped being a full time dispatcher. When she returned to full time duties he had approximately two and a half years in that position.

to the Union. These included the distribution of overtime hours, pay rates and the adoption of the Quinn bill. These were not individual issues, but issues she advocated on behalf of the Union and its membership. Of these, the Quinn bill issue was particularly acrimonious. The Union was trying to get the Town to adopt the Quinn bill. At one point Town Administrator Melville indicated to the Union that they had a deal. The selectmen later refused to back the bill at Town Meeting and it was voted down. The Union leadership, including Ms. Jones, accused Mr. Melville of reneging on the agreement, and planned to file an unfair labor practice against him. At least one Union officer went to a selectman to complain about Mr. Melville. The matter was publicly discussed and in the newspapers, and Mr. Melville was irate.

      Ms. Jones' affidavit and that of Officer Hutton show that she was an active Union officer and member of its bargaining committee. She spoke at meetings, negotiating sessions and to other officers at the police station about matters of concern to the union. The matters are not personal to her and therefore are of public concern. In particular, the dispute over wearing an American flag patch and the dispute over the Quinn bill certainly affected the public. The Quinn bill involved the expenditures of public monies, had to be approved at town meeting, resulted in a public dispute between the Union and the Town manager and selectmen, and received public discussion in local newspapers. These matters certainly are more than the "marginal touching" on matters of public concern that were found sufficient in <u>Connick</u> to allow a plaintiff to move to the third step of determining whether the First Amendment speech was a motivating factor in the discharge.

DISPARATE TREATMENT

M.G.L. c. 151B prohibits discrimination in all of the terms and conditions of employment, and not just illegally motivated discharge. Of course, evidence of disparate treatment is also direct evidence that may allow a jury to conclude that the ultimate discharge was motivated by discrimination.

Ms. Jones was treated differently than similarly situated males in a number of ways. The most important have to do with her discharge. The Town has accused her of falsifying records by submitting a detail slip for the detail she did not reach during the snow storm. Officer Cronin, a male, did not reach the detail at the appointed time, was told not to go to the detail, and never actually worked at the detail. The detail was finally cancelled just as he arrived at the site, an hour and a half after the scheduled start of the detail. He was paid, without question, and not subject to any discipline. The Town docked Ms. Jones' pay, but then agreed to compensate her for that time. Despite this acknowledgement that it was wrong to dock Ms. Jones' detail pay, the Town still argues that she was not entitled to be paid for that detail and offers that payment as justification for Ms. Jones' discharge.

The Town has a transcript, which it contends is accurate, of Officer Cronin telling Ms. Jones that she should falsely state that she was at the detail site and left. She never did that. The only discipline Officer Cronin received was verbal counseling. Officer Cronin is male. Thus he was counseled for allegedly telling Ms. Jones to falsify a record, while she was discharged for simply putting in for the contractual minimum time.

The Town has identified one incident where a male was disciplined for receiving detail pay for time he was being paid to work his regular shift. The Town refused to disclose the specific discipline, but it did not include discharge. In that case an officer

knowingly sought to be paid twice for the same hour of work. The Town characterizes Ms. Jones' actions as falsely putting in for detail time; a directly analogous infraction. Yet, the male officer was not severely punished, let alone discharged.

Ms. Jones suffered an injury to her hand from firing a weapon in a departmentally required training. Massachusetts law provides for compensation for on the job injuries. MGL c. 41, sec. 111F. That statute contains no limitation on when a claim may be filed. In fact, the Town now concedes that Ms. Jones had an on the job injury. Nevertheless, it has refused to provide Ms. Jones with 111F benefits despite the fact that numerous male employees have received such benefits.

Ms. Jones called in to the dispatcher and sought to use a holiday rather than take sick leave or report the injury. She is permitted by contract to do that. She asked the dispatcher on duty to look at the book to determine if there were enough people working to permit her to take the holiday. Ms. Jones has in fact received similar calls from males in her capacity as a dispatcher. No other person has been disciplined for making such an inquiry.

The Town argues that Ms. Jones acted improperly by asking the dispatcher to see if he could put her in for a holiday rather than speaking with the sergeant in charge. This is at most an argument of form over substance. There is no dispute that Ms. Jones was injured, and therefore that she was entitled to take injured on duty leave or sick leave. She did not need permission to take either of those types of leave. She was also entitled to take holiday leave if a sufficient number of people were working; a fact that was determined by the ministerial act of "checking the book". The Town's attempt to discharge her for not talking to the sergeant on duty must be contrasted with the

discipline it meted out to the two male officers who were found to have falsified sick leave. Again, the Town refused to disclose the exact discipline, but it did not include discharge and was not severe enough for them to cite the exact nature of the discipline. This is again evidence of disparate treatment in the discipline of Ms. Jones.

Ms. Jones was never given the training required to become "cruiser qualified", or even an explanation of what training was required. A number of male officers were cruiser qualified. As a result, she could not work regular police shifts that would have required her to patrol in a police cruiser. Chief Mason eventually promoted a number of cruiser qualified special police officers to the position of full time regular police officer. Ms. Jones was denied that opportunity.

Defendants have also asserted that Ms. Jones was on probation. No male has been asked to serve a second probation for the same position when they have finished a first probation.

The evidence of disparate treatment between Ms. Jones and male employees in and of itself constitutes evidence of unlawful discrimination. These facts would allow a jury to determine that Ms. Jones had been treated differently in the terms and conditions of her employment than similarly situated males. It is also evidence that the reasons advanced by defendants for their actions are false and therefore pretextural.

### MS. JONES HAS ESTABLISHED A PRIMA FACIE CASE OF DISCRIMINATION

There is no question that Ms. Jones has made out a prima facie case of discrimination under M.G.L. c. 151B as defined above by the Massachusetts Supreme Judicial Court. In a discharge case the employee may establish a prima facie case of discrimination by showing "that "(1) he is a member of a class protected by G. L. c.

151B; (2) he performed his job at an acceptable level; (3) he was terminated; and (4) his employer sought to fill the plaintiff's position by hiring another individual with qualifications similar to the plaintiff's. ..." Abramian v. Pres. & Fellows of Harvard College, 432 Mass. 107, 116 (2000), quoting Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 441 (1995). As a woman Ms. Jones is in a protected class. She was qualified for her job. As to her qualifications, she was initially recruited by then Police Chief Greenwood. Ms. Jones worked as a full time dispatcher for over a year and a half before resigning her position. Her evaluations as a dispatcher were excellent to outstanding during that period. She continued to work part time for the police department. Lt. Gagnon recruited Ms. Jones to return to full time work, and Chief Mason praised her skills and experience in his letter recommending her reappointment. Chief Mason was going to reinstate her at a step three pay level because of her experience and the fact that she did not require any training.

 Chief Mason also reappointed Ms. Jones as a special police officer on three occasions. His recommendation that she be reinstated as a full time dispatcher, and his willingness to reappoint her as a special police officer, demonstrate that Chief Mason did not have any concerns about her credibility, reliability or work habits. After her reinstatement Ms. Jones found herself subject to more scrutiny and management began to "nitpick" her work. She complained, without avail, of the way officers on her shift were making traffic stops. Even then, defendants offer no record that she was disciplined subject to her discharge or that she was not a qualified employee.

 Thus, the evidence establishes that Ms. Jones performed her job at an acceptable level. Since Ms. Jones was discharged and since the defendants filled the position with a

person with no different or greater qualifications, Ms. Jones has made out a prima facie case of discrimination.

## THE EVIDENCE ESTABLISHES THAT THE DEFENDANTS' STATED MOTIVES FOR DISCHARGING MS. JONES WERE FALSE AND THEREFORE PRETEXTURAL

The fact that the Town claimed that Ms. Jones was on a second probationary period evidences the fact that it did not have a basis for discharging her. The Town was well aware that no arbitrator would sustain the discharge, on the grounds alleged, as having been made for just cause. Its only hope of avoiding arbitration was to allege that Ms. Jones was on probation. Yet, neither Chief Mason, Lt. Gagnon, Lt. Mitchell nor anyone else ever told Ms. Jones or the Union that she was on probation prior to the time she was discharged. The letter reinstating Ms. Jones as a full time dispatcher does not mention probation. This is in complete contrast with her initial hiring in which the appointment letter specifically stated that she was on probation. Chief Mason's letter seeking Ms. Jones' reinstatement also acknowledges that she knows the job and the Town, and will need no training. She was given no new training. Unlike her initial period of employment, Ms. Jones received no written evaluations. Thus, there was no need for a new probationary period, and she was never treated like a probationary employee.[3] The Town was so desperate that it took the extraordinary step of suing to enjoin arbitration on that issue; a motion that was quickly denied.

Thus, there is ample evidence from which a jury could find that the Town and Chief Mason knew full well that Ms. Jones was not a probationary employee. As shown above, the evidence also establishes that Ms. Jones had a real injury when she sought to

---

[3] The arbitrator's decision has foreclosed any argument by the Town that Ms. Jones was a probationary employee.

take sick leave on April 15, 2003, and that defendants had confirmed that fact long before they discharged her. The evidence also shows that Ms. Jones followed routine practices in asking for other types of leave before taking sick leave, in asking the dispatcher to "check the book" to see if she could take other leave, and in not speaking to the officer on duty. In fact, her reluctance to report her injury was also not unusual, nor has reporting an injury after twenty four hours been a problem for male officers. All of these facts belie one of the reasons advanced to justify her discharge, and thus establish it is false and pretextural.

The other reason advanced for discharge was that Ms. Jones "falsified" a detail slip. The matter is fully discussed above. It is apparent that Ms. Jones checked with the Union vice president who told her she was entitled to the detail pay. She had reported that she could not make the detail, and thus it cannot be argued that she stated she was present. There was no set way to fill out the detail slip. Even Lt. Mitchell acknowledged that half of the officers simply fill out detail slips by listing the scheduled hours of the detail rather than the hours worked. Male officers have been paid for details that were cancelled late, even if they did not go to the detail, and the male officer who was scheduled to work with Ms. Jones was paid despite the fact that he never did any work on the detail and did not go to the site until long after the scheduled time. This is ample evidence that this accusation is also false and therefore pretextural.

For purposes of Ms. Jones' C. 151B claim the evidence of pretext coupled with the prima facie case warrants a finding of discrimination, and therefore precludes this case from being decided for defendants on summary judgment. The proof of a First Amendment claim is not quite the same. Nevertheless, Ms. Jones has made out a prima

facie case of violation of her First Amendment rights by demonstrating that she spoke on matters of public concern and that the Town had no basis to suppress that speech. The evidence cited above, including that the reasons advanced by the Town for the discharge were false, would require a jury to determine the real reasons for the discharge. Here, the most striking change between Ms. Jones' first and second periods as a full time dispatcher was that she became a Union officer. There is no evidence that her work changed, only evidence that she became vocal on matters in dispute with management. A "close temporal proximity between two events may give rise to an inference of causal connection," Nethersole v. Bulger, 87 F.3d 15, 18, 20 (1st Cir. 2002) (emphasis added) (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998)), Lewis v. City of Boston, CA No. 02-1495 (1st Cir. 2003). Ms. Jones' problems started not long after she became a Union officer. Her discharge occurred at point when Union was battling the Chief Mason, Town Administrator Melville, and ultimately a Town Meeting vote. The fact that all four Union officers suffered discipline, when no other officer was disciplined, is itself sufficient to allow a finding of anti-union animus.

Since the ultimate determination of motivation is "fact laden", and given the evidence that defendants had an anti-union animus, lied about the reasons to discharge Ms. Jones and took extraordinary steps to avoid arbitration, there is evidence from which a jury could conclude that defendants were motivated by the statements she made as a Union representative.

## QUALIFIED IMMUNITY

Chief Mason's assertion of qualified immunity is without merit. The essence of the case law cited in defendants' brief, and well established by now, is that an officer will

have immunity if the law is not so sufficiently established that a reasonable police officer would understand that there conduct violated the plaintiff's rights.  The law cited above is not new.  It is well established that a police officer cannot be fired for exercise of their First Amendment rights.  Defendants argue only that Ms. Jones' statements were not of public concern, and therefore do not constitute the exercise of protected speech.  They also argue a lack of causation; a question of fact which cannot be resolved on qualified immunity grounds.

Ms. Jones was a Union officer, a member of its Union Board and a negotiating team member.  She spoke on issues, and participated in meetings and negotiations on issues on behalf of the Union as a whole.  These issues were not personal in nature.  Some of the issues involved the integrity of the Town Administrator and the wearing of American flag patches and pins.  Certainly those are matters of public concern.  The law prohibiting discharge for discussion of matters of public concern is well established, and qualified immunity does not apply.

## CONCLUSION

For the foregoing reasons defendants motion for summary judgment must be denied.

Respectfully submitted
By Plaintiff's Attorney,

 /S/ Brian Rogal_____
Brian Rogal, Esq., BBO #424920
Law Offices of Timothy Burke
160 Gould Street, Suite 111
Needham, MA  02494
(781) 455-0707