# LAW OFFICES OF TIMOTHY M. BURKE

### NEEDHAM CORPORATE CENTER
160 Gould Street, Suite 111
Needham, Massachusetts 02494-2300
(781) 455-0707
Facsimile (781) 455-8879



*Timothy M. Burke*
*Joseph P. Kittredge*
*Sheila E. McCravy*
*Scott W. Dunlap*
*Suzanne T. Caravaggio*

January 14, 2005

**Of Counsel**
*Brian J. Rogal*
*Joseph G. Donnellan*

United States District Court
Civil Clerk's Office
John Joseph Moakley U.S. Courthouse
One Courthouse Way
Boston, MA 02210

     RE:   <u>*Carolyn E. Jones v. William A. Mason, et al*</u>
           *Civil Action No. 04-10133-MEL*

Dear Sir or Madam:

    Enclosed please find the original exhibits that belong with Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, which were filed electronically on January 13, 2005.

    Due to the voluminous size of the exhibits I was unable to file such electronically. Therefore, would you kindly file and docket same accordingly.

    Thank you for your attention to this matter.

           Very truly yours,

           Brian Rogal

BR/lld
Enclosure
cc:   Michael C. Gilman, Esquire

# Exhibit 1

# AGREEMENT

### BETWEEN

### TOWN OF HARWICH

### AND

# INTERNATIONAL BROTHERHOOD
# OF POLICE OFFICERS
# LOCAL 392

### EFFECTIVE JULY 1, 2000 THROUGH JUNE 30, 2003

modify this Agreement. The arbitrator shall be governed by and take into account Massachusetts statutes and appellate court decisions in making his finding.

Section 2. A grievance shall be deemed waived by the Brotherhood and the grievant unless presented at each step within the time limits herein provided. The responsibility is on the Brotherhood and the grievant to process the grievance within the time limit(s) provided. A grievance not answered or not timely answered at each step by the Town shall not excuse the Brotherhood or the grievant from complying with the time limits, unless such time limits are extended by mutual agreement.

Section 3. For purposes of determining timely compliance of the limits discussed above, Saturday, Sunday and holidays will not be counted.

## ARTICLE VIII

## DISCHARGE OR DISCIPLINE



Section 1. No permanent employee who has completed his probationary period, twelve (12) months from the date of full-time permanent appointment, shall be discharged or disciplined except for just cause. It is understood that in the course of investigation into an officer's conduct, the Chief may call such officer in for oral inquiry. When an employee's job is in jeopardy, the officer shall, upon request, be entitled to legal counsel and/or Brotherhood representation under this Section, provided, that in no event shall the inquiry be delayed longer than twenty-four (24) hours for the purpose of securing such counsel. Notwithstanding anything in the previous sentence to the contrary, an employee shall be entitled to legal counsel whenever criminal charges are contemplated.

Section 2. In the event an employee is suspended from the payroll in a disciplinary matter, he shall not be required to work during the period of his suspension without pay.

7

Nothing in this Article shall prevent the Chief from reducing holiday pay as a disciplinary action whether or not a particular holiday is worked. In no event will an employee be docked more than the number of holidays not worked in any year.

Section 3. Unless it will jeopardize or impede a criminal investigation, an employee will be notified immediately upon initiation of an investigation which could lead to disciplinary action. Such disciplinary act shall be **initiated within seven (7) days of the completion of the investigation.**

Section 4. Notwithstanding any contrary provision of this Agreement, discipline or discharge of a probationary employee shall not be subject to the grievance and arbitration provisions of this Agreement. New applicants will be advised of this provision in writing, attached to the application. **Satisfactory completion of basic training at a police academy is a precondition for continued employment.**

## ARTICLE IX

## HOURS OF WORK AND OVERTIME

Section 1. Each permanent full-time member of the Department shall work a regular work week of four (4) consecutive eight and one-half (8 ½) hour days followed by two (2) days off. Hereafter this schedule will be referred to as the 4 & 2.

**The regular shift rotation shall be open for shift bidding by Patrol Officers based upon seniority for the period of October 1, 2000 through June 30, 2001. Said nine month (three quarters) shift bidding procedure shall be considered a trial period subject to the following restrictions:**

(a)    In August, 2000, each Patrol Officer will list his or her first and second preferences for shift assignments during the three quarters commencing

3

# **Exhibit 2**

NAME  Carolyn E. Jones

ADDRESS  302 Rt. 28

TOWN  Orleans, MA  02653

TEL

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

DATE APPLICATION REC

DATE PHYSICAL TAKEN

DATE INITIAL P. B. APPROV.

D. O. B.  08-09-69

RETIREMENT DATE

VETERAN        SEX  Female

EMPLOYMENT DATE

## SERVICE RECORD

| EFFECTIVE DATE | CLASSIFICATION | DEPARTMENT | SALARY OR WAGES | GRADE | STEP # | TYPE OF INCREASE |
|---|---|---|---|---|---|---|
| 07-01-99 | Assistant Dispatcher (Y.R.Spc) | Police | $$12.67 | SP4 | 1 | Orphan |
| 12/1/99 | Full Time Dispatcher | " 13.71 Split Exam $5360 $24,410.79 | P3A | 1 | Promotion |
| 2/1/00 | Dispatcher | $28,923.61 | P-3A | 2 | Contract |
| 4/6/01 | LDW - DISPATCHER | | | | | |
| 4/4/01 | Y.R. Spc. Officer | Police Dept. | 13.18/hr | PB/SP4 | 1 | Orphan |
| 2/1/01 | Ground Special | " | 13.58 | PB/SP 4 | 1 | " |
| 2/1/01 | Asst ACO | " | 13.5-8 | PB/SP 4 | 1 | |
| 2/1/02 | " | | 13.98 | PB/SP 4 | 1 | |
| 2/1/02 | " | 14/16 hour | 14.62 | 14/SP4 | 2 | " |
| 12/1/02 | Dispatcher | w4/STEP .28 $28,966 | SP P-2A | 2 | |
| 6/7/03 | LDW | | | | | |

210

JJ 24

# **Exhibit 3**

# Harwich Police Department
## Memorandum

TO:      **Board of Selectmen**

         **Wayne Melville**
         Town Administrator

FROM:    Bill Mason
         *Chief of Police*

DATE:    November 15, 2002

SUBJECT: **Appointment of Carolyn E. Jones as a Full-Time Dispatcher**

### Background

Patricia MacDonald resigned as a dispatcher (communications specialist) for the Harwich Police Department effective November 21, 2002 to fill the same position with the Brewster Police Department. A current eligibility list does not exist for the position of police dispatcher.

Carolyn E. Jones was a dispatcher for the Harwich Police Department and resigned her full-time position on January 8, 2001 to continue her education; however, she remained as a year-round part-time special officer assisting Animal Control Officer Jack Burns, filling vacant shifts as a dispatcher, working details, and special events. She has agreed to fill the full-time dispatcher position vacated by Ms. MacDonald. Due to Special Officer Jones' knowledge of the position, Town, and Department, she will require no additional training to fulfill the responsibilities as a full-time dispatcher.

### Recommendation

After careful review of Ms Jones' background, resume, work performance, and staff recommendation, I am requesting that she be appointed as a full-time dispatcher effective November 25, 2002. Her recommended starting salary is Dispatcher, Step P-2A $29,966.58 annually.

If you have any questions or need further clarification, please feel free to contact me at your earliest convenience.

CC:    Lieutenant Tom Gagnon
       Ms. Carolyn E. Jones
       Personnel File

# **Defendant, Town of Harwich's Answers to Plaintiff's First Set of Interrogatories**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CAROLYN E. JONES,
    Plaintiff

    v.

WILLIAM A. MASON, Chief of
Police, Harwich Police Department
and TOWN OF HARWICH,
    Defendants

Civil Action No. 04-10133-MEL

## Defendant, Town of Harwich's Answers To Plaintiff's First Set of Interrogatories

Interrogatory No. 1

State the names, addresses, all telephone numbers, and relationship to you of all

persons who saw or heard, or claim to have seen or heard, or whom you have any

reason to believe have any knowledge of any of the incidents, allegations, injuries

or damages referred to in the complaint or defenses.

Answer No. 1

Harwich Police Lieutenant Barry Mitchell
183 Sisson Road
Harwich, MA  02645

Harwich Police Lieutenant Thomas Gagnon
183 Sisson Road
Harwich, MA  02645

Harwich Police Officer Michael Porter
183 Sisson Road
Harwich, MA  02645

Harwich Police Sergeant Christopher Kender
183 Sisson Road

Interrogatory No. 2

As to each person named in your answer to the preceding interrogatory, state:

(a)    Describe in detail each person's knowledge including what each person saw, heard and did, and describe how you became aware of that information;

(b)    Identify all documents containing any statement or account by each such person, describe the document, and identify the holder of the document.

Answer No. 2

(a) I have no personal knowledge of what each person saw, heard or did;

(b) Investigative report prepared by Lieutenant Barry Mitchell; a February 24, 2003 memorandum from Sergeant Christopher Kender; and a memorandum that went into Ms. Jones' supervisory file.

Interrogatory No. 3

Aside from this action, have the Defendants received any complaints of sexual harassment or sex discrimination by its employees between January 1, 1995 and the present? If so, describe each claim in detail including giving the dates, identifying each court or tribunal where a complaint was filed, including the case or docket number; identifying the person making the complaint, and the person about whom the complaint was made; describing how the claim was investigated, and the result of any investigation, settlement or litigation.

Answer No. 3

**Cheryl Poore v. Harwich School Committee - 1997**

Poore alleges she was denied the position of softball coach baseball her gender and sexual orientation. The case was filed at the MCAD.

*Donna Gomes v. Town of Harwich – August 29, 2000*

Ms. Gomes alleged that three men hired at the Highway Department, subsequent to her date of hire, were offered a higher starting rate of pay than she was offered. Gomes filed her claim of discrimination at the MCAD. The case was settled at hearing.

*Carolyn Carey and Ann Schweizer v. Board of Selectmen*

This was a case where two female employees at the Community Center were allegedly harassed and intimidated by a member of the Board of Selectmen based upon the fact that they were gay. The Board of Selectmen, after a hearing, voted to censure the Board member for her behavior in this instance. This matter was never filed at MCAD or in court. It was a high profile case for a long period of time.

*Carolyn Jones v. Chief of Police, Harwich Police Department, Town of Harwich – 2003*

This case was filed with the MCAD.

*Jennifer Van Gelder v. Chief of Police, Harwich Police Department, Town of Harwich – 2003*

Mrs. Van Gelder filed her claim of discrimination at the MCAD. The matter is still pending.

Interrogatory No. 4

For each expert witness who is expected to testify on your behalf at the trial of

this case:

(a)    identify said expert witness and his area of expertise;

(b)    describe the substance of the facts to which each expert witness will testify;

(c)    describe the opinions to which each expert witness will testify;

(d)    summarize the grounds for each opinion;

(e)    any monetary compensation provided or promises to each such expert witness.

Answer No. 4

The Defendants do not intend to call any expert witnesses at the trial in this matter and therefore cannot presently identify any experts that will testify at trial.

Interrogatory No. 5

Identify and describe in detail each and every reason that the Defendant relied upon to terminate the Plaintiff's employment. For each reason identified state the basis for the Defendant's contention that such reason or cause actually occurred. As part of your answer provide the following information:

(a)     Describe in detail all things that were done to investigate each allegation or reason, identifying each person playing any role in that investigation and describing their role, and giving the results of that investigation;

(b)     Identify each person making any allegation against the Plaintiff, giving the date, describing the allegation in detail, stating to whom it was made, and whether written or oral;

Answer No. 5

Please refer to answer to Interrogatory Number Five of Chief William Mason's Answers to Plaintiff's Interrogatories.

Interrogatory No. 6

Describe in detail each investigation by or for the Defendant since January 1, 1998 regarding any alleged abuse or misuse of sick leave, injured on duty status or C. 111F benefits by any employee of the Harwich Police Department. As part of your answer identify each person involved, describe their role, describe the

allegation and describe in detail the result of the investigation including any

discipline.

Answer No. 6

Both Scott VanGelder and Phillip Fennell were disciplined by Chief Greenwood for abuse of sick-leave which involved feigning illness on predictable days with short notice.

Now retired Officer Earl LeGeyt attempted to file a 111F claim approximately two years after the alleged job related injury. The claim was denied.

Since Chief William Mason's arrival, several employees have been counseled on sick-leave abuse issues by various supervisors. Recently, Lieutenant Mitchell issued a notice regarding strict adherence to the policy and potential for disciplinary action should violations occur. These actions have seemed to rectify the issues.

Interrogatory No. 7

Describe in detail each investigation by or for the Defendant since January 1,

1998 regarding any alleged abuse of detail time including any allegation of any

officer seeking payment for a detail to which they were not entitled. As part of

your answer identify each person involved, describe their role, describe the

allegation and describe in detail the result of the investigation including any

discipline.

Answer No. 7

Now retired Lieutenant Manuel Gomes took disciplinary action against Officer John Warren for attempting to receive double pay regarding a detail and duty time. Officer Warren was scheduled to work the Midnight to 8:00 a.m. shift. In addition, he requested and was assigned a detail which was scheduled to start at 7:00 a.m. Officer Warren left work early without approved leave. His time report reflected working his shift until 8:00 a.m. and his detail time report indicated he started work at 7:00 a.m. This resulted in Officer Warren being paid twice for the 7:00 a.m. to 8:00 a.m. time period (by the Town and by the detail). Officer Warren received disciplinary sanctions for this action.

Interrogatory No. 8

> Do you claim that the Plaintiff did not injure her hand on or about April 15, 2003, did not injure it while on or in the line of duty, or that said injury did not preclude her from working? If so, state the basis for all such contentions including identifying all medical opinions upon which you rely.

Answer No. 8

The Plaintiff failed to follow the parties' Collective Bargaining Agreement, as well as Department policy, when she failed to report her injury to the Department.

Interrogatory No. 9

> State the basis for your contention that the Plaintiff was required to serve or was subject to a new probationary period when she was rehired as full time dispatcher in or about December 1, 2002. As part of your answer identify all statements, documents and contract provisions which you rely upon.

Answer No. 9

Please refer to answer Number Nine of Chief William Mason's Answers to Plaintiff's Interrogatories.

Interrogatory No. 10

> For the period from January 1, 1997 to the present describe in detail all requirements that special police officers had to satisfy in order to drive a police cruiser while on patrol or on details without having another officer with them. As part of your answer state the basis for each such requirement including identifying the source of the requirement, the person creating the requirement and whether it was written or oral

Answer No. 10

Please refer to answer Number Ten of Chief William Mason's Answers to Plaintiff's Interrogatories.

Interrogatory No. 11

For the period from January 1, 1997 identify each special police officer, describe all things each officer did to qualify to operate a police cruiser on their own, including a full description of all dates and types of training, and the date they became qualified. If the plaintiff was not so qualified state each reason why she was not considered to be qualified.

Answer No. 11

Please refer to answer to Number Eleven of Chief William Mason's answers to Plaintiff's Interrogatories.

Interrogatory No. 12

Identify each female that has applied to be a full time or special police officer with the Town of Harwich since January 1, 1994, give their dates of application and employment if any, and give the reasons why they were denied employment, and, if employed, why they are no longer employed.

Answer No. 12

Prior to Chief William Mason's arrival in 2000, the selection process for special and regular police officers was not formalized; therefore, records regarding who applied cannot be found. The only records available are for actual hires as special and regular officer hires.

Previous Selection Process -- Hired first as a seasonal special, then a year-round special, then a full-time year round special (i.e. working 40 hour per week schedule similar to a regular officer, cruiser qualified, and assigned to sectors). When openings for regular officer were available, full-time year-round specials would be interviewed by command

staff who would make recommendations to the chief who would then interview and make the final determination. Regular officers Chief Mason recommended for appointment under this process were:

> James Cheverie
> Tracey Clarke
> Heath Eldridge

Ms. Jones was not hired under this process as she did not qualify for the following reasons:

1.  She did not request to be hired as a full-time officer at this time. To the contrary, she resigned her position as a full-time dispatcher to continue her education.

2.  She never served as a full-time year-round special working a 40 hour per week schedule or any variant of a regular officer's schedule.

3.  Ms. Jones was not "cruiser qualified" under any standard, previous or current, of the Department.

Since Chief Mason's arrival, there has been a drastic reduction in the utilization and dependency on use of special officers to fill law enforcement responsibilities in the Town of Harwich. Seasonal special officers have not been utilized since the summer of 2000. Additional year-round special officers have been sparingly hired to fill specific needs and requirements. Other than the year round special officers that were cruiser qualified and routinely utilized to fill sector assignments **prior to Chief Mason's arrival**, special officers have not been hired for shift deployment. To the contrary, the number of shifts where cruiser qualified special officers are being utilized for sector assignments has been minimized with preference being given to regular officers who have a higher level of training, professionalism, and capabilities. Special officers who have been hired since 2000 are as follows:

> Sergeant Chester Wright (retired and became a special officer – still employed)
> Lynda Brogden-Burns (currently employed)
> Officer Earl LeGeyt (retired and became a special officer – currently employed)
> Edward Silva (requested to go from full-time regular to part-time special-currently employed)
> Mary Louise Secola (currently employed)

Current Selection Process – Formal public advertisement and posting of available full-time regular officer positions or the need to establish an eligibility list, review of the letter of interest/resume, professionally developed written examination, oral board, and complete background investigation to establish the initial eligibility list. Prior to actual hiring, a second interview with members of the command staff and the Chief, written and oral psychological examinations, comprehensive medical, and the State physical

assessment test (PAT) must be completed and passed. Once hired, the basic recruit academy (if needed), followed by a 10 week field training program, and one year probationary period complete the selection process. The rational for each of these steps in the selection process is self-explanatory.

The eligibility list is established through a combined score of the written, oral, and background investigation. Individuals are offered positions based upon this list in sequential order utilizing the rule of three for the final interview. Prior to being actually hired, the candidate must pass the remaining portions of the selection process. Regardless of gender, individuals are offered positions from this list. If an individual is not offered a position, it is because other candidates obtained a higher score. Regular officers hired under this process include:

> Thomas Clarke
> Edward Cronin
> Paul Boorack
> Joseph LaBelle
> Marc Harris
> Chris Van Ness
> Richard Buttrick
> Derek Dutra
> Ryan Mawn
> (current vacancy pending appointment)

Ms. Jones was not hired under this process as she did not qualify specifically because she did not apply for the position, submit an application, or complete any portion of the selection process.

The current process utilized by the Harwich police Department is nationally accepted and recognized as the standard for police recruit selection by every major police professional organization including the International Association of Chiefs of Police, Massachusetts Chiefs of Police Association, Colorado Association of Chiefs of Police, Standards for Law Enforcement Accreditation, and utilized by the vast majority of the law enforcement agencies throughout the United States including Massachusetts and Cape Cod jurisdictions. Although the Harwich Police Department **is not** a Civil Service Agency, the selection process replicates many portions of the Massachusetts civil service process. In addition, courts throughout the United States have ruled in favor of this selection process including Massachusetts.

In addition to Ms. Jones, female regular and special police officers hired by this Department include:

> Hired prior to 2000 –
>
> Jennifer (Corwin) VanGelder (regular) - PERAC Medical Retirement at her request
> Susan Ahearn (special) - PERAC Medical Retirement at her request
> Amy Clough (special/full-time dispatcher) - Currently Employed at HPD

Diane Akeman (regular) - Took full-time position as a Harwich Fire Dispatcher

Hired since 2000 –

| | |
|---|---|
| Tracy Clarke (regular) | Currently Employed at HPD |
| Lynda Brogden-Burns (special) | Currently Employed at HPD |
| Mary Louise Secola (special) | Currently Employed at HPD |

Interrogatory No. 13

State each and every reason why the Plaintiff was not offered a full time position as a police officer for the Town of Harwich. If any of the reasons are that the Plaintiff was not qualified or unsuitable, state the basis for each such reason, including the identity of all facts, statements or documents on which you rely.

Answer No. 13

Please refer to answer to Number Thirteen of Chief William Maso's Answers to Plaintiff's Interrogatories.

Interrogatory No. 14

Identify each full time police officer hired by Harwich since January 1, 1999, and describe in detail all reasons why that person was hired rather than the plaintiff.

Answer No. 14

Please refer to answer Number Thirteen of Chief William Mason's Answers to Plaintiff's Interrogatories.

Interrogatory No. 15

Describe each and every reason why the plaintiff was not allowed to work on a light duty status beginning on or about June 6, 2003 and thereafter, and for each such reason state the basis for that reason, including identifying all facts, statements and documents relied upon.

Answer No. 15

By contract, the ability to return to voluntary light duty is at the discretion of the Chief of Police.

According to Dr. Minor, Ms. Jones could not use the injured hand to repeatedly answer phones, type on the computers, write notations, etc., all of which are essential elements of dispatching or any other restricted duty position within the Department.

Having Ms. Jones working in this capacity could have potentially aggravated the injury and/or necessitated having another person assigned to Dispatch in the event that calls for service or field demands exceeded Ms. Jones' limitations.

Interrogatory No. 16

Specify and describe all payments that the plaintiff would have been eligible for

or been paid had she remained a dispatcher with the Town of Harwich to the

present time. Include salary, incentives and a full description of all benefits of

any nature or description. For each benefit give the cost to the town. Include

overtime or details that she would have been eligible for.

Answer No. 16

Ms. Jones would have been entitled to all payments, incentives and bonuses due her as a full time dispatcher covered by the collective bargaining agreement in effect between the Town of Harwich and the Harwich Police Federation.

Interrogatory No. 17

Specify and describe all payments that the plaintiff would have been eligible for

or been paid had she been hired as a full time police officer by the Town of

Harwich beginning in November 1999 and continuing to the present time.

Include salary, incentives and a full description of all benefits of any nature or

description, including contributions by the Town to retirement. For each benefit

give the cost to the Town.  Include overtime or details that she would have been

eligible for, and provide the average, mean and maximum amount paid to

Harwich police officers for details, overtime and court time, each stated

separately, for each calendar or fiscal year during that period.

Answer No. 17

Defendants hereby object to this Interrogatory on the basis that such a response would be
mere speculation in light of the fact that the Plaintiff never took any affirmative step
toward applying for and becoming a full-time police officer for the Town of Harwich.

Interrogatory No. 18

Identify each person employed by or for the Harwich police department since

January 1, 1995 who has been discharged during their probationary period and

give the reasons for their discharge.

Answer No. 18

Ms. Maryanne Larrivee was hired as a full-time dispatcher for this Department and
served a probationary period.  While on probation, Ms. Larrivee was terminated for
performance and suitability concerns.

Interrogatory No. 19

Do defendants claim that any other person has been required to serve a second

probationary period after being rehired by the Town?  If the answer is yes, state

the basis for that claim, including the identity of each such employee and all

documents and statements supporting that contention.

Answer No. 19

Jennifer Corwin (VanGelder) was hired as a police dispatcher (1988) and served a
twelve month probationary period.  She subsequently took a leave of absence from the
Department to take a position as a campus police officer at Babson College in

Massachusetts. She returned to her dispatch position and was subsequently hired as a regular police officer for the Harwich Police Department in 1993 and served a second twelve month probationary period. A written notice of the second probationary period for regular police officer (1993) was found in her file.

Edward Silva was hired as a full-time year-round special police officer after which he was hired as a regular police officer. He was on probation while working a regular shift schedule pending attending the Massachusetts Criminal Justice Training Council Basic Recruit Academy. While in the Academy, he failed his final exam. Officer Silva was reduced to his previous position as a full-time year-round special police officer. He then attended the Massachusetts Criminal Justice Training Council Basic Recruit Academy a second time which he passed. He served a second probationary period after graduation. On October 22, 2004, I contacted Officer Silva and he confirmed that he served two probationary periods. His personnel file has written notification for both probationary periods.

Dianne Aikman was hired as a special police officer in 1995 for the Harwich Police Department. In 1997 she became a full-time dispatcher and served a twelve month probationary period. She then left the Department to take a position as a police officer for the MIT Police Department in Boston. In 1998, she was rehired as a full-time special officer for the Harwich Police Department. In 1999, she became a full-time regular officer and served a second twelve month probationary period. A written notice of the first probationary period was found in her file.

Officer Aram Goshgarian was hired as a special officer then as a regular police officer. He attended the Massachusetts Criminal Justice Training Council Basic Recruit Academy after which he started a twelve month probationary period. Officer Goshgarian resigned from the Harwich Police Department to accept a position with the United States Secret Service. He subsequently resigned from the Secret Service, was reappointed as a regular police officer for this Department, and served a second probationary period of twelve months. Officer Goshgarian's personnel file contains written notice of both probationary periods.

With the exception of Ms. Jones, the Union or no individual has contested their probationary status based upon lack of written notification or having to serve a second period upon rehire. It is very evident that the practice of the Police Department and Town was and is to have rehired employees serve a second probationary period. Since 1993, there have been no exception to this practice.

Signed under the pains and penalties or perjury, this _16th_ day of _November_, 2004.


Wayne C. Melville
Wayne Melville
Town Administrator


As to objections:


Robert J. Van Campen
BBO # 648638
GILMAN/HOLTZ, P.C.
25 New Chardon Street
Boston, MA 02114
(617) 720-2663

## Certificate of Service

I, Robert J. Van Campen, hereby certify that I have served a true and accurate copy of the foregoing document upon Brian Rogal, Esq., at 160 Gould Street, Suite 111, Needham, MA 02494, by first class mail.

Robert J. Van Campen

DATED: *11-17-04*

# Defendant, William A. Mason's Answers to Plaintiff's First Set of Interrogatories

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CAROLYN E. JONES,
        Plaintiff

v.                                          Civil Action No. 04-10133-MEL

WILLIAM A. MASON, Chief of
Police, Harwich Police Department
and TOWN OF HARWICH,
        Defendants

## Defendant, William A. Mason's Answers To Plaintiff's First Set of Interrogatories

Interrogatory No. 1

State the names, addresses, all telephone numbers, and relationship to you of all persons
who saw or heard, or claim to have seen or heard, or whom you have any   reason to
believe have any knowledge of any of the incidents, allegations, injuries or damages
referred to in the complaint or defenses.

Answer No. 1

Harwich Police Lieutenant Barry Mitchell
183 Sisson Road
Harwich, MA  02645

Harwich Police Lieutenant Thomas Gagnon
183 Sisson Road
Harwich, MA  02645

Harwich Police Officer Michael Porter
183 Sisson Road
Harwich, MA  02645

Harwich Police Sergeant Christopher Kender
183 Sisson Road
Harwich, MA  02645

Harwich Police Sergeant Dennis Kendrick
183 Sisson Road
Harwich, MA  02645
Harwich Police Sergeant David Jacek
183 Sisson Road

for the Defendant's contention that such reason or cause actually occurred. As part of your answer provide the following information:

(a) Describe in detail all things that were done to investigate each allegation or reason, identifying each person playing any role in that investigation and describing their role, and giving the results of that investigation;

(b) Identify each person making any allegation against the Plaintiff, giving the date, describing the allegation in detail, stating to whom it was made, and whether written or oral.

## Answer No. 5

The termination of Ms. Jones as an employee of the Harwich Police Department primarily centers on her proven inability to follow policies, procedures, rules, regulations, and the provisions of the Employee Contract in the discharge of her duties and responsibilities. Both of these incidents were reported by Sergeant Chris Kender after they had been brought to his attention. He filed written reports to Lieutenant Mitchell which then prompted further investigation. Specific examples of policy, procedure, rule, regulation, and Contract violations are provided below.

Pursuant to Harwich Police Department Directive 00-2: Chain of Command which was issued on October 19, 2000, Section 3 states, "Unless exigent circumstances clearly warrant otherwise, employees of this Department will follow the established chain of command regarding compliance to orders, application of policy, staffing, requests for leave, assignment, and field direction, as well as interpretation and application of policies, procedures, rules, and regulations."

On February 18, 2003, Ms. Jones contacted Sergeant Jacek regarding the status of the detail and was advised by Sergeant Jacek that the detail had not been cancelled at that time and needed to report for the assignment. Ms. Jones did not consult with or receive approval from a supervisor regarding the appropriateness of submitting a time report for this detail to which she did not arrive. Personnel from the Massachusetts State Police, other jurisdictions, and peer police officers (unless assigned and acting as an officer in charge) were not part of Ms. Jones' chain of command. If in fact she would have received information indicating the cancellation of a detail, her obligation would have been to inform the duty supervisor for disposition.

On April 15, 2003, in seeking to manipulate departmental records for her own benefit, Ms. Jones failed to contact an available duty supervisor, Sergeant Kender, to request leave even though she was advised to do so by the then Union president (Dispatcher) William Willis.

In both of these incidents, if she would have consulted with and/or followed the direction of a Department supervisor, these issues would not have occurred.

**Directive 01-3: Police Details and Special Assignments (issued April 12, 2001)**

Pursuant to Harwich Police Department Directive 01-3: Police Details and Special Assignments which was issued on April 12, 2001, Section 8 reads, "Officers are to report only the hours actually at the detail location on their time report.  A. Travel time to and from the detail location is not to be included."

Even though she failed to report for a detail assignment on February 18, 2003, Ms. Jones submitted a time report indicating that she worked 7:00 a.m. to 11:00 a.m. when in fact she never arrived at the Department or detail location prior to its cancellation over one hour after the scheduled start time.

Section 10 states "Once an officer has accepted a detail, it becomes a duty assignment. Officers are to report for details on time as scheduled unless the duty supervisor has approved absence or modification." Ms. Jones contacted Sergeant Jacek regarding the status of the detail and was advised by Sergeant Jacek that the detail had not been cancelled at that time and she needed to report for the assignment. The issue here is not that she was going to be late for the detail, but, by her own statements, she questioned her ability to report at all due to being stuck in her driveway unable to dig out and **in fact never did report**. Ms. Jones then subsequently submitted a time report for payment when the detail was cancelled over one hour after its scheduled start time expecting to be paid for a job she could not have worked.

Further, Harwich Police Department Rules and Regulations Section 1, Paragraph F *Required Conduct:* Subsection 20. "Line-of-Duty Disability – **Any injury, no matter how minor it may seem at the time**, illness or disability **incurred in the line of duty, shall be reported, in writing, by the officer concerned to his Commanding Officer,** and this report will be properly investigated, by said Commanding Officer…."

*Employment Agreement – Town of Harwich and the IBPO Local 392* Article XXIX *Injury on Duty,* Section 1 *Determination of Injury on Duty (IOD) Status*, Subsection (b): "Any employee claiming injury on duty must complete a Department claim form by the end of the tour of duty on which the injury occurred unless said employee is incapacitated from completing said form in which case the employee must file the claim form within 24 hours of the injury or if still incapacitated then the employee or his/her designee must file the claim form within 72 hours of the injury. At the time the claim form is filed with the Chief's office, it must be accompanied by a signed medical release…."

On April 15, 2003, Ms. Jones failed to notify a supervisor as required by Department practice and procedure of this injury in a timely manner either at the range or Department.

Between April 15 and April 23, 2003, Ms. Jones' actual work record was as follows:

- April 15th        Range Training
- April 16th        Sick Leave
- April 17th        Off
- April 18th        Off
- April 19th        Sick Leave
- April 20th        Holiday Leave

- April 21st          Regular Duty
- April 22nd          Regular Duty
- April 23rd          Off (reported injury to Lieutenant Mitchell)

Prior to her April 23rd conversation with Lieutenant Mitchell, no indication was given by Ms. Jones regarding the status of any range related injury. Copies of a completed Injury Report were provided by Ms. Jones to Lieutenant Mitchell on April 29th and forwarded to the Chief on April 30, 2003. As of May 7, 2003, the computerized "q-sheet" reporting the incident remained incomplete. Furthermore, as of May 7, 2003, the requested original claim forms had not been received by the Department as required by the insurance carrier.

Both the prevailing union contract and Department Policies and Procedures in place since 1992 **require** that all on the job injuries be **immediately** reported to a supervisor. Ms. Jones did not indicate in any manner that she was injured in the line of duty until eight days after the scheduled range training date even though she had multiple opportunities to report any issues to several different supervisor during this period. Two of those days were worked by Ms. Jones who made no mention what so ever of any job related injury or complained of any pain, malady, or difficulty during those full tours of duty. On the range date itself, two supervisors and two additional range instructors were present during the training session. At no time did Ms. Jones complain of any injury, discomfort, or difficulty.

Pursuant to Harwich Police Department Rules *and Regulations* Section 1, Paragraph G *Prohibited Conduct:* Subsection 1 reads, "Conduct Unbecoming an Officer – The commission of any specific act or acts of immoral, improper, disorderly or intemperate personnel conduct which reflects discredit upon the officer himself, upon his fellow officers or upon the Police Department."

Subsection 7 reads, "False Information on Records – An officer or employee shall not make or submit any false or inaccurate reports or **knowingly enter or cause to be entered into any departmental books, records or reports, any inaccurate, false or improper information**."

At the request of Dispatcher Jones, a meeting was held in my (Chief Mason's) office on May 20, 2003 to allow her to explain her side of the incident. Lieutenant Mitchell, Union Representative Sean McArdle, and I were present. She admitted that she attempted to have Dispatcher Willis put her in for a "holiday leave" day knowing that would not be allowed with the number of shift personnel currently scheduled off. When Dispatcher Willis referred Dispatcher Jones to Sergeant Kender for approval of her request; she expressed her concern with discussing the matter with Sergeant Kender and told Dispatcher Willis to put her out "sick." Although Dispatcher Jones stated she did "nothing wrong," was not abusing sick leave, and was being scrutinized, in hind sight she admitted that this was an error, demonstrated poor judgment, and if she had reported the injury and/or discussed the matter with a supervisor as required by contract and policy, this investigation, meeting, and potential disciplinary action would have been avoided.

Subsection 8 reads, "Feigning Illness or Injury – An officer shall not feign illness or injury, falsely report himself ill or injured, **or otherwise deceive or attempt to deceive any superior officer as to the condition of his health. A patrolman, special officer, detective or dispatcher, reporting out sick or injured, shall report by telephone directly to a sergeant, lieutenant or captain, if one of the above is available.** If not available, the dispatcher will take the message and pass it along to the officer in charge, who may during the next shift call the reporting party to determine the nature of the sickness or injury."

On April 15, 2003, Ms. Jones failed to contact an available duty supervisor, Sergeant Kender, to request leave even though she was advised to do so by the then Union president (Dispatcher) William Willis.

As a result of reviewing the report submitted by Sergeant Kender, the subsequent investigation conducted by Lieutenant Mitchell, recording of the initial conversation to Dispatcher Willis, and the meeting on May 20, 2003, I am of the opinion that Ms. Jones clearly violated the specified portions as stated above of the established Rules and Regulations of the Harwich Police Department. This finding is predicated on Dispatcher Jones' attempt to manipulate the Department's leave policies to her personal advantage, failing to accurately report the condition of her health, and attempting to have false information entered into an official Department record. Department Rules and Regulations must be adhered to if this organization is to function in an efficient and orderly fashion.

Because this was the second documented incident of extremely poor judgment that caused negative reflection on Ms. Jones as a probationary employee during the first six months of full-time employment I recommended her termination from employment. As mentioned above, the first incident related to submitting a time slip for a detail to which she never arrived after it was subsequently cancelled over an hour after its scheduled start time. Regarding this incident, Lieutenant Mitchell counseled her clearly and specifically regarding her poor judgment, responsibility to follow the chain of command, policies and procedures, as well as the importance of maintaining a positive and professional reputation which reflects well upon the Department. Both of these incidents have created concern and dissention within the Department and could have been clearly avoided if Ms. Jones had taken the proper action by contacting a supervisor (failing to follow the chain of command).

Interrogatory No. 6

Provide a detailed description, including relevant dates, of your education, work history, experience, and training, including all qualifications to be a police chief.

Answer No. 6

Please refer to resume of Chief William Mason submitted as Response to Request Number Six of the Plaintiff's Request for Production of Documents.